

# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | Michael T. Mason | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| **CASE NUMBER** | 03 C 4266 | **DATE** | 6/29/2004 |
| **CASE TITLE** | Ramirez vs. Barnhart | | |

**MOTION:** [In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd party plaintiff, and (b) state briefly the nature of the motion being presented.]

**DOCKET ENTRY:**

(1) ☐ Filed motion of [ use listing in "Motion" box above.]
(2) ☐ Brief in support of motion due _____.
(3) ☐ Answer brief to motion due_____. Reply to answer brief due_____.
(4) ☐ Ruling/Hearing on _____ set for _____ at _____.
(5) ☐ Status hearing[held/continued to] [set for/re-set for] on _____ set for _____ at _____.
(6) ☐ Pretrial conference[held/continued to] [set for/re-set for] on _____ set for _____ at _____.
(7) ☐ Trial[set for/re-set for] on _____ at _____.
(8) ☐ [Bench/Jury trial] [Hearing] held/continued to _____ at _____.
(9) ☐ This case is dismissed [with/without] prejudice and without costs[by/agreement/pursuant to]
       ☐ FRCP4(m)   ☐ Local Rule 41.1   ☐ FRCP41(a)(1)   ☐ FRCP41(a)(2).
(10) ■ [Other docket entry] For the reasons stated in the attached Memorandum Opinion and Order, plaintiff's motion to reverse the final decision of the Commissioner [10-1] is denied and defendant Commissioner's motion for summary judgment [12-1] is granted. The decision of the ALJ is affirmed. The Clerk of Court is directed to enter judgment on behalf of defendant Barnhart, Commissioner of Social Security and against plaintiff, Margarita Ramirez. Enter Memorandum Opinion and Order.

(11) ■ [For further detail see order attached to the original minute order.]

| | | | |
|---|---|---|---|
| | No notices required, advised in open court. | | Document Number |
| | No notices required. | number of notices | |
| | Notices mailed by judge's staff. | | |
| | Notified counsel by telephone. | JUN 3 0 2004 date docketed | |
| ✓ | Docketing to mail notices. | | |
| ✓ | Mail AO 450 form. | docketing deputy initials | 14 |
| | Copy to judge/magistrate judge. | | |
| KF | courtroom deputy's initials | 2004 JUN 30 AM 8:13 date mailed notice | |
| | | Date/time received in central Clerk's Office | mailing deputy initials |

# IN THE UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | |
|---|---|
| MARGARITA RAMIREZ ) | |
| ) | |
| Plaintiff, ) | |
| ) | No. 03 4266 |
| v. ) | |
| ) | Mag. Judge Michael T. Mason |
| JO ANNE B. BARNHART, Acting ) | |
| Commissioner of Social Security ) | |
| ) | |
| Defendant. ) | |

**DOCKETED**
JUN 3 0 2004

## MEMORANDUM OPINION AND ORDER

Michael T. Mason, United States Magistrate Judge:

Plaintiff, Margarita Ramirez ("Ramirez" or "plaintiff"), has brought a motion for summary judgment seeking judicial review of the final decision of the Commissioner of Social Security ("Commissioner" or "defendant"), who denied Ramirez's claim for Supplemental Security Income benefits ("SSI") under the Social Security Act ("Act"), 42 U.S.C. §§ 416(i), 423(d), 1381a. Defendant, Barnhart, filed a cross motion for summary judgment asking that we uphold the decision of the Administrative Law Judge ("ALJ"). We have jurisdiction to hear this matter pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3). For the following reasons, we deny plaintiff's motion and grant defendant's motion, affirming the decision of the ALJ.

## Procedural History

Ramirez filed an application for SSI benefits on January 2, 2001, alleging an amended disability onset date of June 17, 2000, her fiftieth birthday. (R. 78-80). Her application was denied initially and after a timely request for reconsideration. (R. 55-57). Thereafter, Ramirez's request for a hearing before an ALJ was granted. (R. 58).

On September 30, 2002, ALJ James A. Horn conducted a hearing at which Ramirez and Stanley Hunton, a vocational expert ("VE"), testified. (R. 23). On November 20, 2003, the ALJ issued an opinion denying Ramirez SSI benefits. (R. 10-14). The Appeals Counsel denied plaintiff's request for review and ALJ Horn's decision became the final decision of the Commissioner. See *Zurawski v. Halter*, 245 F.3d 881 (7th Cir. 2001); Reg. §416.1481.

## Plaintiff's Testimony

Margarita Ramirez was fifty years-old at the time she filed her application for benefits and fifty-two at the time of the hearing. (R. 24). Ramirez has a fourth grade education and cannot read or write English. (R. 26). Most recently, Ramirez worked as a motel housekeeper. (R. 26-29). Prior to that, she worked as an assembler in a factory, a housekeeper for a private home, and a popcorn packer in a popcorn factory. (R. 27-29).

Plaintiff testified that during the four months prior to the hearing, she lost all strength in her right side. Ramirez lost strength from her right shoulder to her right foot, including her right arm and hand. *Id.* She also testified that she frequently experiences dizziness, and that her feet swell daily, preventing her from walking more than eighty feet at a time. (R. 32-36). Finally, she stated that she cannot stand for long periods of time or hold objects in her right hand. (R. 36-37).

Ramirez testified that she lives with her daughter and grandchildren. (R. 26). Her daily activities include watching television and doing light housework, such as cleaning the patio for a half hour at a time. (R. 37). She also stated that she is not

2

currently taking medication to control her diabetes due to lack of funds. *Id.* However, she testified that she still smokes a pack of cigarettes a day, which her daughter buys for her. (R. 37-38).

**Medical Evidence**

In addition to plaintiff's testimony, ALJ Horn also considered the medical evidence in the administrative record. On September 19, 1996, Dr. Jose Trevino treated plaintiff for a wound check. At that visit, plaintiff complained that her hair was falling out, and she was referred to Dr. Tages. (R. 139). Dr. Trevino's notes from plaintiff's next visit on March 7, 1997 indicate "no significant objective findings." *Id.* Two weeks later, plaintiff returned complaining of abdominal pain. (R. 138). Again, Dr. Trevino referred Ramirez to Dr. Tages. *Id.*

According to medical records from Rush-Copley Medical Center ("Copley"), plaintiff was admitted on January 1, 1998, with complaints of "high fever, chest congestion, shortness of breath, vomiting, nausea, and headaches." (R. 140-50). The x-rays of her heart revealed that it was a normal size and shape. (R. 141). Plaintiff's diagnosis was pneumonia and asthma. (R. 141). Her records from Copley also contained a medical history that included uncontrolled diabetes and hypertension. *Id.* The doctors at Copley treated plaintiff and provided her with a mandatory diet designed to help control her diabetes. *Id.* The doctors also recommended insulin as an optional treatment method. *Id.*

On June 24, 1998 Dr. Richard Kammenzind examined plaintiff. (R. 161). Plaintiff reported having diabetes for the past three years and taking Glucophage to

control it. *Id.* Ramirez complained of blurred vision. *Id.* Ramirez also reported that she did not have a history of infection or numbness in her feet, but she did have a cyst and rash in her groin area. *Id.*

Dr. Kammenzind diagnosed type II diabetes and found that Ramirez's blurred vision may be a result of low blood sugar. (R. 163). He also found that her cyst and rash were related to the diabetes. Dr. Kammenzind did not detect any evidence of retinopathy, renal disease, peri-orbital edema, or ankle edema. *Id.* He also noted that Ramirez was a long term smoker who suffered from chronic bronchitis, although her lung exam was normal and he did not hear any rales, rhonchi, or wheezing during the exam. *Id.*

A couple weeks later, on July 6, 1998, Calixto F. Aquino, Jr., M.D., a Disability Determination Services ("DDS") physician, completed a Residual Functional Capacity ("RFC") assessment for Ramirez. Dr. Aquino found that Ramirez retained the RFC to perform medium exertional level work. (R. 164-171). He found that Ramirez could lift and/or carry fifty pounds occasionally and twenty-five pounds frequently. He also found that she could stand, sit and/or walk six hours in an eight-hour workday. (R. 165). Dr. Aquino opined that plaintiff had an unlimited ability for pushing and pulling, including the operation of hand and foot controls. *Id.* Ramirez also did not have any postural, manipulative, visual, communicative, or environment limitations. (R. 166-69).

On November 28, 2000, plaintiff visited Dr. Tages. (R. 173). Ramirez reported that she had checked her blood sugar levels three weeks ago, but did not remember the results. *Id.* Ramirez complained of "pain in the lower quadrant, and a gastritis type

pain." *Id.* Dr. Tages did not note any objective medical findings. (R.176).

On March 14, 2001, Dr. Roopa Karri performed an Internal Medical Consultative Examination on Ramirez at the request of her attorney. (R. 189-92). Plaintiff told Dr. Karri that she had diabetes since 1994, and high blood pressure and high cholesterol for the last two and a half years. (R. 189). Additionally, she complained of low back pain for the past three and a half months. *Id.* Dr. Karri found that Ramirez suffered from diabetes mellitus, which "might be causing neuropathic pains on both thighs." (R. 192). Dr. Karri also noted hypercholesterolemia and hypertension that could be controlled with medications. *Id.* Dr. Karri further found that plaintiff suffered from low back pain with tenderness in the interscapular area, but she had a normal range of motion. *Id.*

On April 9, 2001, Reynaldo M. Gotanco, M.D., a DDS physician, performed a second RFC assessment on Ramirez. Like Dr. Aquino, Dr. Gotanco found that plaintiff retained the RFC to perform medium exertional level work. (R. 193-99). Dr. Gotanco opined that Ramirez could lift and/or carry objects weighing up to fifty pounds occasionally and twenty-five pounds frequently. He also found that she could stand and/or walk for six hours in an eight-hour workday. *Id.* Dr. Gotanco opined that plaintiff had an unlimited ability for pushing and pulling, including the operation of hand and foot controls, and did not have any postural, manipulative, visual, communicative, or environment limitations. (R. 195-97).

5

## Standard of Review

We must affirm the ALJ's decision if it is supported by substantial evidence and free from legal error. 42 U.S.C. §405(g); *Steele v. Barnhart*, 290 F.3d 936, 940 (7th Cir. 2002). Substantial evidence is more than a scintilla of evidence and is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Diaz v. Chater*, 55 F.3d 300, 305 (7th Cir. 1995) (quoting *Richardson v. Perales*, 402 U.S. 389, 401 (1971)). We must consider the entire administrative record, but we will not "reweigh evidence, resolve conflicts, decide questions of credibility, or substitute our own judgment for that of the Commissioner." *Lopez v. Barnhart*, 336 F.3d 535, 539 (7th Cir. 2003) (quoting *Clifford v. Apfel*, 227 F.3d 863, 869 (7th Cir. 2000)). We will conduct a "critical review of the evidence" and will not let the Commissioner's decision stand "if it lacks evidentiary support or an adequate discussion of the issues." *Id.* (*quoting Steele*, 290 at 940.). The ALJ "must build an accurate and logical bridge from evidence to [his] conclusion," however he need not discuss every piece of evidence in the record. *Dixon v. Massanari*, 270 F.3d 1171, 1177 (7th Cir. 2001).

## Analysis

A person is disabled under the Act if "he or she has an inability to engage in any substantial gainful activity by reason of a medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. 423(d)(1)(A). The determination of disability is conducted at an administrative hearing. Unlike other legal proceedings, Social Security proceedings are inquisitorial, rather than

6

adversarial. *Sims v. Apfel*, 530 U.S. 103, 111-112 (2000). The ALJ must investigate and develop the arguments both for and against granting benefits, and the Council's review is similarly broad. *Id.* It is the obligation of the ALJ to develop a full and fair record. *Thompson v. Sullivan*, 933 F.2d 581, 585 (7th Cir. 1991) (quoting *Smith v. Secretary*, 587 F.2d 857, 859 (7th Cir. 1978)).

In determining whether the claimant is disabled, the ALJ must considers the following five-step inquiry set forth in 20 C.F.R. § 416.1920(a)-(f): "(1) whether the claimant is currently employed, (2) whether the claimant has a severe impairment, (3) whether the claimant's impairment is one that the Commissioner considers conclusively disabling, (4) if the claimant does not have a conclusively disabling impairment, whether she can perform her past relevant work, and (5) whether the claimant is capable of performing any work in the national economy." *Dixon*, 270 F.3d at 1176. Under this evaluation, "an affirmative answer leads either to the next step, or, on [s]teps 3 and 5, to a finding that the claimant is disabled. A negative answer at any point, other than [s]tep 3, ends the inquiry and leads to a determination that the claimant is not disabled." *Zurawski*, 245 F. 3d at 886. However, if the claimant reaches step 5, "the burden shifts to the ALJ to establish that the claimant is capable of performing work in the national economy." *Id.*

Steps 1 through 3 of the ALJ's analysis are not contested. ALJ Horn found that plaintiff was not currently gainfully employed; suffered from the severe impairments of asthma and diabetes; and that those conditions "failed to meet or medically equal any section of the listing of impairments." (R. 13). At step 4, the ALJ found that despite

7

Ramirez's impairments, she had the RFC to perform medium work. The VE testified that plaintiff's past relevant work as a motel maid was considered light, unskilled work. Therefore, the ALJ concluded that with an RFC to perform medium work, Ramirez could perform her past relevant work as a hotel maid and thus was not disabled under the Act. Because the ALJ concluded that Ramirez could perform her past relevant work, he never reached step 5 of the analysis.

**Credibility Determination**

Ramirez's sole ground for appeal is that the ALJ did not properly analyze the credibility of her testimony at step 4 in his analysis. Ramirez argues that because the ALJ did not "explain away [her] testimony ... his RFC finding of medium work is not supported by substantial evidence." *Plaintiff's Brief* at 7. Specifically, Ramirez argues that the ALJ failed to "explain away her testimony" because he stopped his analysis at "no findings" and "no consistency with the doctors' reports." *Id*. Ramirez does not take issue with any other aspect of the ALJ's opinion.

For her appeal to succeed, Ramirez must overcome the highly deferential standard we accord credibility determinations. Because the ALJ is in the best position to evaluate the credibility of a witness, we only reverse an ALJ's credibility finding if it is "patently wrong." *Powers v. Apfel*, 207 F.3d 431, 435 (7th Cir. 2000). However, "according to [SSR] 96-7p, which applies to the ALJ's evaluation of an applicant's description of symptoms, the evaluation must contain 'specific reasons' for a credibility finding, the ALJ may not simply 'recite the factors that are described in the regulations." *Steele*, 290 F.3d at 942-43 (*quoting* SSR 96-7p). "Without an adequate explanation,

neither the applicant nor subsequent reviewers will have a fair sense of how the applicant's testimony was weighted." *Id.*

When assessing the claimant's credibility regarding her symptoms, the ALJ must follow the specific requirements set forth in SSR 96-7p. First, the ALJ must determine whether the symptoms are substantiated by medical evidence. *Lopez ex rel. Lopez v. Barnhart*, 336 F.3d 535, 539 (7th Cir. 2003). If the alleged symptoms are not supported by objective medical evidence, the ALJ evaluates the effects of the complained-of symptoms on the individual's functional ability to work, taking into account the claimant's daily activities; her past work history and efforts to work; the dosage, effectiveness, and side effects of medication; medical evidence from treating physicians and third parties; laboratory findings; and any proposed course of treatment. *See Scheck v. Barnhart*, 357 F.3d 697, 703 (7th Cir. 2004); *Luna v. Shalala*, 22 F.3d 687, 691 (7th Cir. 1994).

As stated above, Ramirez testified that during the four months prior to the hearing she did not have any strength in the right side of her body. She also stated that her feet swelled and she was not able to walk. She estimated that she could not walk more than eighty feet. Ramirez also reported episodes of dizziness and swelling in her right hand during humid conditions. Finally, Ramirez testified that she could stand for any length of time, or hold anything with her right hand.

First, the ALJ properly found that there were no objective clinical findings likely to give rise to plaintiff's alleged disabling symptoms. In his opinion, the ALJ thoroughly analyzed the medical evidence in the administrative record and accurately noted that

9

the evidence therein did not contain findings to support plaintiff's alleged symptoms. The ALJ noted the lack of any objective clinical findings in the medical reports of plaintiff's treating physicians, Drs. Trevino and Tages. He also noted that Dr. Tages did not impose any physical limitations on plaintiff. (R. 12). Additionally, both of plaintiff's RFC assessments indicated that she was capable of performing medium exertional level work and the administrative record did not contain any medical findings to contradict those assessments.

Next, the ALJ noted that plaintiff's reported symptoms and functional limitations primarily began four months prior to the hearing, and more than a year after plaintiff's last reported visit to a physician. The claimant has the primary responsibility for producing medical evidence demonstrating the severity of her alleged impairments. *Flener ex rel. Flener v. Barnhart*, 361 F.3d 442, 448 (7th Cir. 2004). The ALJ must make his credibility determinations based on the evidence before him. He is not required to order additional testing solely to support or discredit plaintiff's hearing testimony.

Having correctly found that plaintiff's alleged symptoms and functional limitations were not supported by medical evidence, the ALJ proceeded to address some of the factors in SSR 96-7p. Although the ALJ's analysis of those factors was not as thorough as we would like, the ALJ did not end his analysis at "no findings" and "no consistency with the doctors' reports," as plaintiff argued. *Plaintiff's Brief* at 7. The ALJ addressed plaintiff's daily activities, which included "doing light housework such as sweeping the outside patio area" for up to half an hour at a time. The ability to sweep the patio for up to a half hour is not consistent with plaintiff's testimony that she "can't [stand] very long

10

because right away it starts to hurt." (R. 36).

The ALJ also addressed plaintiff's current medications as required by SSR 96-7p. The ALJ noted that plaintiff had been prescribed "oral agents for her diabetic condition," but she was not currently taking them due to lack of funds. However, the ALJ also noted that while plaintiff claimed not to be able to afford her medication, "she continues to smoke a pack of cigarettes per day purchased by her daughter."

Earlier in his opinion, ALJ Horn also briefly discussed the proposed course of treatment for plaintiff's diabetes. The medical personnel at Copley had extensive discussions with plaintiff about a mandatory diet to control her diabetes and also suggested Insulin as an optional treatment. This conservative course of treatment does not support plaintiff's allegations of extensive physical limitations.

Although the ALJ could have provided a more extensive analysis of the factors outlined in SSR 96-7p, "[n]o principle of administrative law or common sense requires us to remand a case in quest of a perfect opinion unless there is a reason to believe that the remand might lead to a different result." *Fisher v. Bowen*, 869 F.2d 1055, 1057 (7th Cir. 1989); see *Shramek v. Apfel*, 226 F.3d 809, 811 (7th Cir. 2000) ("We give the [ALJ's] opinion a commonsensical reading rather than nitpicking at it.") (internal quotations and citations omitted). We will not "disturb the determination, as long as [we] find some support in the evidence." *Dixon*, 270 F.3d at 1178-79. We do not believe that a remand would lead to a different result. The evidence in the record supports the ALJ's credibility determination and plaintiff has not demonstrated that the ALJ's credibility determination is patently wrong.

11

## Conclusion

For the reasons set forth above, the Court finds that the ALJ's credibility determination regarding plaintiff's testimony was not in error and, therefore, his RFC determination was supported by substantial evidence. Consequently, we deny Ramirez's motion for summary judgment, and grant the Commissioner's. The decision of the ALJ is affirmed. It is so ordered.

**ENTER:**

*[signature]*

**MICHAEL T. MASON**
**United States Magistrate Judge**

Dated: June 29, 2004